UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
**SEP 29 2005**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| KENT JENSEN, | CIV 03-4200 |
| Plaintiff, | |
| -vs- | MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| MARY LOU JORGENSON, DOUGLAS WEBER, BOB DOOLEY, ED LIGTENBERG, MERLYN BALDWIN, DAVID GEFFRE, SHARON LARSON, ROBERT D. HOFER, and TRANSCOR AMERICA, LLC, and JOHN DOE'S ONE THRU SIX, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Kent Jensen ("Jensen"), a former inmate, filed a Complaint pursuant to 42 U.S.C. §1983 alleging that defendants Jorgenson, Weber, Dooley, Ligtenberg, Baldwin, Geffre, Larson and Hofer ("State Defendants") violated his constitutional rights under the First, Fourth Eighth and Fourteenth Amendments by failing to notify him that a violation of the rules of parole supervision would be considered a basis for imposing his three years suspended sentence, and for revoking parole and imposing the suspended sentence. Jensen asserts that defendants Transcor America ("Transcor") and its six John Doe employees subjected Jensen to cruel and inhumane conditions while transporting him to the South Dakota State Penitentiary from a jail in Texas, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Pending before the Court are Defendants' Motions for Summary Judgment, Doc. 22, and Doc. 25. For the following reasons, the Court will grant Defendants' motions.

## BACKGROUND

On January 27, 1994, Jensen was charged with failure to appear at his arraignment scheduled for January 25, 1994.[1] Jensen was not apprehended until May of 1997. On September 29, 1997, Jensen pleaded guilty to the failure to appear charge. The court sentenced Jensen to five years in the South Dakota State Penitentiary ("SDSP"), with three years suspended on the condition that Jensen: (1) not violate the law, (2) pay costs, and (3) pay all restitution and fines imposed in another criminal case. Jensen was admitted into the SDSP on October 28, 1997. Jensen's two-year sentence would expire on October 28, 1999, at which time he would begin serving the three-year suspended sentence. He was released from prison on parole on April 28, 1998, after serving six-and-one-half months.

Prior to his release, Jensen signed an agreement which set forth the conditions of his parole. The reference to "suspended sentence" was crossed out on the form agreement. Two "X"s were placed before the provisions in the form agreement that applied to Jensen. Paragraph 13(e) was not made applicable to Jensen. That paragraph states:

> I understand that the rules of parole supervision shall also apply to the suspended portion of my sentence. I also understand that in the event I violate parole prior to my suspended sentence commencing, the Board has the authority to violate the suspended portion, impose the entire sentence; and I may not be given credit for time spent on suspended sentence.

Jensen indicates that this led him to believe that a violation of the rules of parole supervision would not apply to the suspended portion of his sentence. (Amended Complaint at ¶ 27.)

Following his release, Jensen was allowed to relocate to North Dakota and later to Texas. The Texas Department of Corrections ("DOC") assumed his supervision under the terms of the parole agreement. Jensen completed his two-year sentence on October 28, 1999, and began serving the suspended portion of his sentence.

---

[1] On January 13, 1994, Jensen was indicted for driving while intoxicated, resisting arrest and intentional damage to public property.

2

On April 30, 2000, Jensen was arrested in Texas for driving while intoxicated. He posted bond and was released. Jensen defaulted on the release bond by not appearing at the scheduled hearing on the charges. On February 14, 2001, Jensen was arrested in Texas for driving while intoxicated, evading arrest and driving under a suspended or revoked license. He was released on bond and again defaulted on the release bond by failing to appear at the scheduled hearing on the charges.

On or about April 26, 2001, the Texas DOC learned of Jensen's April 30, 2000 and February 14, 2001, arrests and his subsequent bond forfeitures. The Texas DOC issued a report notifying the South Dakota Parole Board of the charges against Jensen. On May 11, 2001, defendant Geffre, the Deputy Interstate Compact Administrator for the State of South Dakota Board of Pardons and Paroles, forwarded the report to the Parole Board. The Parole Board issued a warrant for Jensen's arrest on May 11, 2001. The "Warrant of Arrest for Alleged Violation of Parole," signed by defendant Ligtenberg, stated that Jensen had violated South Dakota law and that a hearing would be held "on charges of alleged violation of his parole agreement."

Jensen failed to report to his Texas parole officer on May 9, 2001, and when the parole officer went to Jensen's last approved residence he found it vacant. On or about June 7, 2001, the South Dakota Parole Board received a report from the Texas parole officer that Jensen had failed to maintain contact with his Texas parole officers. On June 8, 2001, defendant Geffre prepared a "Violation Report Addendum" for the Parole Board. The report stated that Jensen was alleged to be in violation of Condition #8 of his parole agreement which states that he will keep his parole agent informed of his whereabouts "and of all activities participated in and submit such reports as required." Geffre recommended that "Jensen be placed on NCIC and when apprehended, be returned to South Dakota to appear before the SD Board of Pardons & Paroles for revocation of his parole."

On August 10, 2001, Jensen was apprehended by Texas officials and was taken into custody on the South Dakota warrant. The DOC contracted with Transcor, a private company

specializing in inmate transportation, to transport Jensen from Belton, Texas to the SDSP in Sioux Falls, South Dakota. Transcor picked up Jensen on August 19, 2001, and delivered him to the SDSP on September 2, 2001. During the standard alcohol and drug-abuse screening process at the SDSP, Jensen told prison officials he had used alcohol and methamphetamine during the time he was serving his suspended sentence.

On September 6, 2001, Jensen signed a form acknowledging that he had been notified of his constitutional rights in regard to a hearing to be held on the "alleged violations of supervision." On September 20, 2001, a "Notice of Board Hearing" was issued and served on Jensen by defendant Sharon Larson, administrative assistant for the South Dakota Parole Board. The first paragraph of the Notice form, which allows space for the typing of "parole," "suspended sentence," or both, referred only to the revocation of the suspended sentence. The Notice stated that the purpose of the hearing was to determine whether reasonable cause existed to believe that Jensen violated the conditions of his suspended sentence. The Notice later indicated that the claimed violation of Jensen's suspended sentence was: "13a. I will not consume, purchase or possess any alcoholic beverage including beer and wine." It also stated:

> If the Board finds that you have violated the terms of your parole or suspended sentence supervision, the Board may revoke your parole or suspended sentence, return you to a correctional facility, take any or all "good time" accrued, impose the original sentence in case of suspended sentences, and deny credit against your sentence for time spent outside prison on parole or suspended sentence supervision.

The Notice advised Jensen of his right to be represented by a lawyer at the hearing, his right to present witnesses and evidence, and his right to confront and cross-examine adverse witnesses.

Jensen waived his right to be represented by an attorney at the hearing before the Parole Board, but he attended it in person. Defendant Jorgenson, Board Member, conducted the hearing on September 26, 2001. Defendant Baldwin, a DOC employee who works for the Parole Board,

4

attended the hearing[2], as well as defendant Larson. Jensen admitted to violating condition 13a of his parole agreement. Board Member Jorgenson concluded that Jensen had violated that term of his suspended sentence, and she recommended that the suspended sentence be revoked and the original five year sentence be reinstated. On September 28, 2001, the Parole Board issued an Order revoking "parole," and imposing Jensen's original five-year sentence. The order was signed by Board Members Hofer and Jorgenson, and served by mail upon Jensen on September 28, 2001. Jensen did not appeal from this Order.

On January 17, 2002, Jensen filed a motion in state court captioned "Motion to Correct Illegal Sentence." Jensen argued that based on an amendment to the statute between the time of his indictment for failure appear and the time of his conviction on that charge, the maximum sentence that could have been imposed was two years. The Lawrence County State's Attorney responded to Jensen's motion in a letter to the court. The State's Attorney did not disagree with Jensen's position that the maximum sentence for failure to appear was two years. The court granted Jensen's motion on February 7, 2002, and entered an amended judgment changing Jensen's sentence from five years with three years suspended, to a term of two years.

On February 15, 2002, Jensen filed an informal resolution request complaining that he was entitled to sixteen days credit pursuant to the amended judgment that had been entered on February 7, 2002. Jensen did not claim he was entitled to immediate release based upon entry of the amended judgment. Prison officials received a facsimile copy of the amended judgment from the Fourth Judicial Circuit Clerk of Court on February 19, 2002. On February 20, 2002, Jensen was unconditionally released from the care and custody of the DOC. In total, Jensen was incarcerated by the DOC for approximately twelve months and ten days.

---

[2]Based upon the parties' submissions, this appears to be Baldwin's sole involvement with this case.

5

Seeking compensatory and punitive damages, as well as attorney fees, Jensen filed his original § 1983 Complaint in this case on August 8, 2003. An Amended Complaint was filed on December 22, 2003.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed. R. Civ. P. 56(e)).

### I. State Defendants

Defendants Jorgenson, Weber, Dooley, Ligtenberg, Baldwin, Geffre, Larson and Hofer contend they are entitled to summary judgment on Jensen's federal claims based on the Eleventh Amendment, absolute immunity and qualified immunity. They assert that the Court should decline jurisdiction over or dismiss Jensen's state law claims against them.

A. <u>Eleventh Amendment</u>

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

6

Thus, "to state a claim under §1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

The Amended Complaint does not indicate whether the defendants are being sued in their official capacities, their individual capacities, or both. In his responsive brief, Jensen states that the defendants are being sued in their individual and not in their official capacities. Any claim against the defendants in their official capacities is a claim against the State of South Dakota. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Damages claims against the State are barred by the Eleventh Amendment. The Court will grant summary judgment to the defendants on any claim against them in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (absent waiver by the State of South Dakota or valid override by Congress, "the Eleventh Amendment bars a damages action against a State in federal court"); South Dakota Constitution, Article III, Section 27; SDCL §§ 3-22-17, (the State of South Dakota has not waived its Eleventh Amendment immunity for damages actions in federal court).

Although the official-capacity claims against the defendants are barred by the Eleventh Amendment, "damages awards against individual defendants in federal courts 'are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.' That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974)). State officials sued in their individual capacities may assert personal immunity defenses. *See Hafer*, 502 U.S. at 25. The Court will consider the immunity defenses asserted by the State Defendants in this case.

B. Absolute Immunity

The Eighth Circuit has held that parole board members are absolutely immune from suit for considering and deciding parole questions, even if they make an unconstitutional or unlawful

decision. *See Patterson v. Von Riesen*, 999 F.2d 1235, 1239 (8th Cir. 1993). The touchstone for applicability of the absolute immunity doctrine is "whether the subject matter of the decision was within the official's power, and whether the official was acting in her official capacity at the time of decision." *Id.* (citing *Liles v. Reagan*, 804 F.2d 493 (8th Cir. 1986)). Jensen argues that absolute immunity does not apply to the parole board members in this case because:

> This case has nothing to do with deciding whether to grant, deny, or revoke parole, Kent Jensen is not complaining about a decision made by parole board members engaged in an adjudicatory process.
> \* \* \* \*
> He is complaining that Defendants revoked his suspended sentence without ever giving him notice and an opportunity to be heard on the issue of whether his suspended sentence should be revoked.

(Doc. 33 at p. 16.)

In support of his position on absolute immunity, Jensen relies heavily on *Freeman v. Blair*, 793 F.2d 166 (8th Cir. 1986). That decision was vacated by *Blair v. Freeman*, 483 U.S. 1014 (1987), but the portion of the opinion regarding absolute immunity was reinstated by the Eighth Circuit on remand at 862 F.2d 1330 (1998). In *Freeman,* the plaintiffs, the Freemans, owned and operated a K.O.A. Campground. 793 F.2d at 169. The defendants, officials from the South Dakota Department of Health ("Health Department"), arrived at the campground and requested permission to conduct an inspection. *Id.* The Freemans denied their request because the Health Department did not have a search warrant. *Id.* Shortly thereafter, the Department suspended the Freemans' campground license without a hearing. *Id.* The Freemans filed a § 1983 claim against the Health Department and various Health Department officials alleging that their rights under the Fourteenth Amendment had been violated. *Id.* at 170. The district court dismissed the Freemans' complaint with prejudice, holding that the Health Department officials, Blair and Massa, were entitled to absolute immunity under *Butz v. Economou*, 438 U.S. 478 (1978), because their decisions to initiate administrative proceedings were "analogous" to a prosecutor's decision to commence prosecution. 793 F.2d at 170. The Eighth Circuit disagreed:

8

> Justice White, writing for the majority [in *Butz*], explained that executive branch officials need absolute immunity in this situation because [t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution and that the discretion of the responsible officials might be distorted in the absence of complete immunity. Defendants Blair and Massa argue that they are entitled to absolute immunity under this rationale for their decisions to suspend the Freemans' license since the license suspension was the first step of an administrative proceeding. We disagree.
>
> Although there is a facial similarity between the factual setting here and the one in *Butz,* we believe that Blair's and Massa's actions prior to the institution of administrative proceedings distinguish this case from *Butz*. Before any administrative proceedings of the type contemplated in *Butz* occurred, the [Health] Department, with the explicit approval of Blair in 1982 and Massa in 1984, decided to conduct an inspection of the Freemans' campground. This is not the type of action that the Court in *Butz* contemplated as generating prosecutorial-type immunity. That type of immunity was reserved for instances in which the proceedings have the characteristics of the judicial process, a conclusion not easily arrived at in regard to a decision to inspect. Instead, we view the decisions to inspect, and more particularly to inspect without a warrant, as ones that were not attended by any of the characteristics normally associated with the judicial process. These decisions are analogous to the kind of administrative or investigative functions for which courts ordinarily do not extend absolute immunity to prosecutors rather than analogous to the kind of function for which a prosecutor would be absolutely immune.

*Freeman*, 793 F.2d at 171 (internal punctuation and citations omitted).

*Freeman* is distinguishable from the present case where the facts show that the Parole Board members and some of its employees were functioning in a quasi-judicial capacity. The present case is more analogous to *Wilson v. Kelkhoff*, 86 F.3d 1438, 1445 (7th Cir. 1996). The *Wilson* court found members of a prisoner review board absolutely immune from the due process claims alleging failure to provide adequate notice of the supervised release revocation hearing, failure to provide plaintiff an opportunity to present evidence and witnesses, and failure to adequately explain that the plaintiff's interview with a parole board member was in fact his final revocation hearing. Like Jensen asserts in this case, Wilson was not complaining about the discretionary decision made by the board. Rather, Wilson contended that the prisoner review board members were performing nondiscretionary acts unrelated to the function immunity is intended to protect because, he argued,

the law clearly set forth the process Wilson was due and the board members simply failed to follow it. *Id.* The Seventh Circuit granted absolute immunity to the board members based on the fact that their activities were all integral to the decision-making process, and were quasi-judicial in nature. *Id.* at 1444-45. The Seventh Circuit stated:

> Indeed, we rejected a similar attempt to parse an official's conduct in *Thompson v. Duke,* where a § 1983 plaintiff argued that absolute immunity should not protect prisoner review board members for failing to hold a timely revocation hearing. The plaintiff's argument, identical in substance to Wilson's, was that because the board members had no discretion to deny or postpone the revocation hearing the scheduling of the hearing was an "administrative" act outside the scope of absolute immunity. We rejected the plaintiff's attempt to avoid the bar of absolute immunity by trying to characterize certain aspects of the judicial function as administrative and therefore not worthy of protection. We held that conduct deserving of protection includes not only actual decisions, but also those mundane, even mechanical, tasks undertaken by judges that are related to the judicial process: [T]he fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function.
>
> The actions of the prisoner board members in this case fall squarely within the class of conduct for which absolute immunity is provided. The decision to revoke Wilson's supervised release, albeit on grounds that Wilson argues were not valid, is a prototypical quasi-judicial act deserving of absolute immunity. Absolute immunity protects board members not only for the decision to revoke Wilson's supervised release, but the board members' actions that are "part and parcel" of the decision-making process. Thus, like the scheduling failure in *Thompson,* the board members are absolutely protected from suit for not providing Wilson sufficient notice of the final revocation hearing. And with respect to the conduct of the hearing itself, the board members merit absolute immunity for their failure to provide Wilson an opportunity to present evidence and witnesses. Similarly, the board members are protected from Brown's alleged failure to adequately identify the final revocation hearing to Wilson. Wilson attempts to characterize the hearing as "investigative" because Brown did not clearly inform him regarding the adjudicative nature of the hearing. However, Wilson's confusion and resulting misperception regarding the proceeding does not change the adjudicative nature of the revocation hearing. The alleged deficiency in the board's written decision is also not amenable to an action for damages, given that it is the product of the quasi-judicial process.

*Wilson,* 86 F.3d at 1444 -1445 (internal citations omitted).

This Court is persuaded by the reasoning of the Seventh Circuit in *Wilson* and holds that the Parole Board members in this case are entitled to absolute immunity for their actions. Jensen

10

complains that he did not have notice or an opportunity to be heard on the issue whether his suspended sentence should be revoked. It is true that his parole agreement does not specifically reference the terms of his suspended sentence. Jensen, however, was aware that the terms of his suspended sentence included a requirement that he not violate the law. He did violate the law and the South Dakota Parole Board was informed of that fact. The arrest warrant signed by Ligtenberg and issued by the Parole Board on May 11, 2001 stated that Jensen had violated South Dakota law.

The first paragraph of the Notice of the revocation hearing issued by the Parole Board and served on Jensen referred only to the revocation of the suspended sentence. The Notice also stated that the purpose of the hearing was to determine whether reasonable cause existed to believe that Jensen violated the conditions of his suspended sentence and indicated that his suspended sentence could be revoked if it was found that he violated its terms. At the revocation hearing on September 26, 2001, Board Member Jorgenson concluded that Jensen had violated the terms of his suspended sentence. Despite the fact that the paragraph of Jensen's parole agreement which states that the rules of parole supervision also apply to the suspended portion of his sentence was not marked and made applicable to Jensen, Jensen received the Notice of Board Hearing and thus was notified that his suspended sentence could be revoked. Although there were references to Jensen's "parole" throughout the process leading to revocation of Jensen's suspended sentence, all of those references were made as "part and parcel" of the Board's decision to revoke Jensen's suspended sentence. All of the Board's actions, albeit not perfect, were associated with the decision to grant, revoke, or deny Jensen's suspended sentence, and were analogous to those activities performed by judges.[3] Accordingly, Jensen's claims against defendant Jorgenson and Hofer are precluded by absolute immunity.

Defendant Geffre was the Deputy Interstate Compact Administrator for the South Dakota Board of Pardons and Paroles. He received and analyzed information from the Texas DOC and

---

[3]This holding is limited to the facts of this case. Some actions of Parole Board members in other cases may not be analogous to those performed by judges and would not entitle them to absolute immunity.

11

Texas parole officers regarding Jensen's activities in Texas, made recommendations to the Parole Board, and issued a parole violation report recommending the issuance of a warrant for Jensen's arrest and return to South Dakota for revocation of his parole. Defendant Ligtenberg was the Executive Director of the South Dakota Board of Pardons and Paroles, and he allegedly consented to Geffre's actions and signed the May 11, 2001 arrest warrant issued by the Board. Defendant Larson was a Parole Program Assistant and Administrative Assistant employed by the South Dakota DOC and the Parole Board. She prepared and served Parole Board papers on Jensen and attended his revocation hearing. Defendant Baldwin, a Parole Board employee, also was present at Jensen's revocation hearing. These Defendants argue that their actions are analogous to judicial acts afforded absolute immunity.

In *Ray v. Pickett*, 734 F.2d 370, 373 (8th Cir.1984), the Eighth Circuit held that a probation officer was only entitled to qualified immunity for the role he played in the parole revocation process because the officer's function was not "so intimately associated with the judicial process that it entitle[d] [him] to an absolute immunity." *Id.* at 373. In *Ray* the probation officer allegedly falsified a report to the United States Parole Commission to secure a parole violator's warrant. The Eighth Circuit found that the probation officer did not perform an adjudicatory function when he filed this report. Twelve years later, in *Anton v. Getty*, 78 F.3d 393 (8th Cir. 1996), the Eighth Circuit concluded that probation officers are entitled to absolute immunity when they "perform discretionary tasks that play an integral part in the decision making process," such as when they "evaluate facts, draw legal conclusions, and make recommendations." *Id.* at 396. In *Anton*, a federal parolee brought a *Bivens* action that included probation officers as defendants. The parolee contended that the probation officers violated his constitutional rights by "concluding that his release plan was unacceptable and recommending that his parole be delayed." *Id.* at 396. The Eighth Circuit found that the information and recommendations provided by probation officers to the parole hearing examiners played a significant part in the decision-making process. *Id.* In reaching this conclusion, the Eighth Circuit distinguished *Ray v. Pickett* where the effect of filing the parole-violation report was merely to trigger an inquiry by another officer that may or may not have led to an administrative proceeding. *Anton*, 78 F.3d at 396 n.5.

12

Geffre was an employee of the South Dakota Board of Pardons and Parole. Jensen complains that Geffre reported to the Parole Board that Jensen was alleged to be in violation of his parole agreement, and Geffre recommended to the Board that Jensen be apprehended and returned to South Dakota to appear before the Parole Board for revocation of his parole. The purpose of these actions was to provide assistance, information and recommendations to the Parole Board members in their decision-making process regarding revocation of Jensen's parole or suspended sentence. There is no allegation or evidence that Geffre harbored any ill-will toward Jensen or had any other non-adjudicatory reason to make the recommendations that he did. As in *Anton*, these specific actions of defendants Geffre were adjudicative in nature. Accordingly, Geffre is entitled to absolute immunity for his actions in relation to the revocation of Jensen's suspended sentence.

Jensen's sole factual allegation against Ligtenberg is: "On May 11, 2001, Ed Ligtenberg issued a warrant of arrest for alleged violation of parole." (Doc. 34, Statement of Disputed Facts at ¶ 5.) Issuance of the arrest warrant was intimately related to the Parole Board's quasi-judicial function in deciding whether to revoke Jensen's parole or suspended sentence. Under the specific facts and limited circumstances alleged in this case, the Court finds that issuance of the arrest warrant was not solely an administrative or clerical act, but rather required exercising judgment and was a quasi-judicial act entitling Ligtenberg to absolute immunity.

Defendants Larson and Baldwin are DOC employees who worked for the Parole Board. Jensen alleges that Larson served Parole Board papers on him, and that both Larson and Baldwin attended his revocation hearing. Larson's activities in preparing and serving documents on behalf of the Parole Board are not comparable to judicial functions. It is not at all clear to the Court what actions were taken by Baldwin, or what authority he had, but it does not appear that he performed functions that were judicial in nature. On the basis of this record, the Court concludes that Larson and Baldwin are not entitled to absolute immunity.

C. Qualified Immunity

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Because Jensen has not set forth specific facts showing what the remaining State Defendants may have done to violate his constitutional rights, the Court is unable to reach the issue of qualified immunity in this case.

Rule 56(c) of the Federal Rules of Civil Procedure requires that Jensen show the existence of a genuine issue of material fact in order to avoid summary judgment. Jensen's allegations that Larson prepared and served notices on behalf of the Parole Board, and that Larson and Baldwin attended his revocation hearing are not sufficient to demonstrate a genuine issue of material fact, and Larson and Baldwin are entitled to dismissal. *See Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988) (district court should have dismissed the complaint with prejudice because plaintiff failed to produce sufficient evidence to support his claimed civil rights violation by the defendant).

Defendants Dooley and Weber are prison wardens. These defendants contend that they are entitled to qualified immunity because there is no evidence that they participated in the revocation of Jensen's suspended sentence or that they were personally aware of or otherwise involved in the challenged actions. A supervisory official, such as a warden, may be liable under § 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient connection between the supervisor's wrongful conduct and the constitutional violation. *See Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994). In the present case, Jensen does not allege that Dooley, as Warden of the Mike Durfee State Prison, or Weber, as Warden of the South Dakota State Penitentiary, had any personal involvement with the alleged deprivation of his constitutional rights in relation to the revocation of Jensen's suspended sentence. Accordingly, defendants Dooley and Weber will be dismissed from this action.

14

## II. Transcor and the John Doe defendants

Defendants Transcor and John Does One through Six submitted a Statement of Undisputed Material Facts. (Doc. 27.) A copy of Transcor's Agent Operations Manual is attached to the Statement of Undisputed Material Facts, along with a copy of Transcor's Activity Logs related to Jensen's transportation and Jensen's Prisoner Packet. Jensen does not dispute most of the facts stated by the defendants. For the facts that he disputes, Jensen fails to cite to the record as required by Local Rule 56.1(c). Rather, Jensen either simply denies the truth of the fact without citing to any evidence, or cites to his unverified Amended Complaint.

The first issue to be determined is whether Jensen has satisfied the requirement to go beyond his pleadings and by affidavit or otherwise designate specific facts showing there is a genuine issue for trial against Transcor and John Does One through Six. Jensen has not submitted any form of verified statement. His Amended Complaint is not verified. Jensen did not even sign the Amended Complaint; it is signed by his lawyer. Thus, the record does not contain any admissible evidence to support Jensen's claims. The Eighth Circuit has held that a *verified* complaint from a *pro-se* litigant can be sufficient to defeat a summary judgment motion. *See Burgess v. Moore*, 39 F.3d 216, 217-18 (8th Cir. 1994) (holding that because the inmate signed his complaint and affidavit under penalty of perjury, the court should have treated both documents as verified); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994) (recognizing that "'a verified complaint is the equivalent of an affidavit for summary-judgment purposes.'") (quoting *Williams v. Adams*, 935 F.2d 960, 961 (8th Cir. 1991)). The Eighth Circuit has recognized a distinction between verified pleadings and unverified pleadings. *See Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984) (holding that "a litigant, especially one unrepresented by counsel ... is [not] under a duty to repeat his verified allegation in a new affidavit. .... This is not, in other words, a case of a plaintiff who simply rested on the unverified allegations of his pleadings."). In this case, Jensen "simply rested on the unverified allegations of his pleadings" and thus cannot defeat Defendants' properly supported motion for summary judgment. Although Defendants may be entitled to summary judgment based solely on Jensen's failure to go beyond his unverified complaint to designate specific facts showing there is a genuine issue for trial, the Court will analyze the merits of Defendants' summary judgment motion.

15

A. Merits of § 1983 Claim of Cruel and Unusual Punishment

"The Constitution does not mandate comfortable prisons; it prohibits inhumane ones." *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement:

> To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, objectively, sufficiently serious, resulting in the denial of minimal civilized measure of life's necessities, and (2) that the prison officials were deliberately indifferent to an excessive risk to inmate health or safety, meaning that the officials actually knew of and disregarded the risk. . . .Absent a showing that the prison officials consciously understood that prison conditions created such an excessive risk, the conditions are not a punishment within the meaning of the Eighth Amendment.

*Williams*, 49 F.3d at 445 (internal punctuation and citations omitted).

1. Objective Component: Whether the Condition is Sufficiently Serious

In his reply brief, Jensen relied on the following facts in support of his claim that he was subjected to cruel and unusual punishment while being transported from Texas to South Dakota by Transcor employees:

> The undisputed facts are that Kent Jensen was chained to a bench in the back of a van with up to eleven (11) other men for a period of at least 23 hours on one occasion and at least 22 hours on another occasion.
> While imprisoned in the back of the van, Kent Jensen was subjected to the August heat in the State of Texas. When he was fed, it was "fast food," which he was required to eat in the van. He was not allowed any water between meals and on one occasion, was not given a restroom break for over twelve (12) hours.

(Doc. 40, p. 4.)

The Transcor vans transporting Jensen were made for twelve passengers. Jensen does not allege that more than twelve passengers were in a van at any given time, and there are no allegations that the vans were unconstitutionally crowded. Jensen's complaints about the "fast food" meals do

16

not rise to the level of a constitutional violation. To prevail on a cruel and unusual punishment claim based on inadequate meals, a prisoner must prove specific physical harm or health risk, or that he was denied a nutritionally and calorically adequate diet. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999); *see also Gwynn v. Transcor America, Inc.*, 26 F.Supp.2d 1256 (D.Colo. 1998) (summary judgment granted to Transcor because records reflected that ten of the nineteen meals the prisoner received during trip were in various jails in which she was housed, and the plaintiff did not allege she suffered any harm because of inadequate food or water). Jensen also has failed to show that his transportation with handcuffs or "chains" violated the Eighth Amendment because, although the handcuffs or chains might have caused some discomfort, their use is "penologically justified 'by the greater risk of escape . . . and the reduced number of guards.'" *Moody v. Proctor*, 986 F.2d. 239, 241 (8th Cir. 1993) (quoting *Fulford v. King*, 692 F.2d 11, 14 (5th Cir. 1982)) (although prisoner suffered injury as a result of the use of a black box applied over his handcuffs, its use was justified and there was no evidence that defendants acted with deliberate indifference). In addition, Jensen has not shown that the heat posed an excessive risk to his health or safety. A prisoner's mere discomfort, without more, does not offend the Eighth Amendment. *See, e.g., Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) ("While the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment.").

Moreover, Jensen has failed to produce any evidence showing that he suffered any actual physical injury as a result of the conditions during his trip to Sioux Falls. Even if he was denied a restroom break for twelve hours on one occasion,[4] without evidence that he suffered any harm, Jensen cannot avoid summary judgment in the defendants' favor. *See Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996)(being exposed to raw sewage for four days does not implicate constitutional concerns when prisoner did not allege that he was exposed to disease or suffered any other consequences of the exposure to the raw sewage); *Williams v. Delo*, 49 F.3d at 445-46 (four days

---

[4]Defendants point to evidence in the record that Jensen was given a restroom break at approximately 4:30 a.m. on August 21, 2001, during the time Jensen alleges he was not given a break.

in strip cell without clothes, bedding or running water did not violate Eighth Amendment when prisoner's health was not impaired). Because Jensen's allegations of inadequate or uncomfortable travel conditions do not amount to sufficiently serious constitutional violations, Defendants are entitled to summary judgment.

### 2. Subjective Component: Whether Defendants Were Deliberately Indifferent

In defining the deliberate indifference standard, the Supreme Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Jensen has not shown that any Transcor employees, particularly John Does One through Six, knew of and disregarded an excessive risk to his health or safety. Although John Does One through Six must have been aware of the conditions associated with Jensen's transportation, there is no evidence that any of them knew of Jensen's complaints or of any excessive risk to his health and safety.

The evidence Jensen has produced, viewed in the light most favorable to him, fails to show: (1) that the conditions of his confinement on the way to Sioux Falls denied him "the minimal civilized measure of life's necessities" and (2) that Transcor employees were deliberately indifferent to "an excessive risk to inmate health or safety." Thus, the defendants, John Does One through Six, are entitled to summary judgment in their favor.

### B. Transcor

A different standard applies to corporate defendants such as Transcor in this case:

> A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The test is whether there exists a policy, custom or action by those who represent official policy which inflicts an injury

actionable under § 1983. In other words, to prove a policy, custom or action, [the plaintiff] must show a continuing, widespread, persistent pattern or unconstitutional misconduct by [the corporation's] employees; deliberate indifference to or tacit authorization of such conduct by [the corporation's] policymaking officials after notice to the officials of that misconduct; and [the plaintiff] was injured by acts pursuant to [the corporation's] custom, i.e., that the custom was the moving force behind the constitutional violation.

*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590-91 (8th Cir. 2004) (internal punctuation and citation omitted). Jensen's failure to describe or identify any Transcor policies or customs which may have caused the deprivation of a constitutional right requires the Court to grant summary judgment in Transcor's favor.

### III. State- Law Claims

In his Amended Complaint, Jensen alleged state law causes of action for false imprisonment, invasion of privacy, infliction of emotional distress, battery, assault, and negligence against the State Defendants. In his response to the motion for summary judgment, Jensen failed to address the State Defendants' argument in their summary judgment brief that they are entitled to summary judgment on those claims. It appears that Jensen has abandoned his state-law claims.

Even assuming Jensen did not abandon his state-law claims, a district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3); *see Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state-law claim pursuant to section 1367(c)(3)). In this case, the defendants are entitled to summary judgment on all claims that fall within the Court's original jurisdiction and the Court will decline to exercise its supplemental jurisdiction over Jensen's state-law claims. Accordingly,

IT IS ORDERED:

(1) That the motion for summary judgment by Merlyn Baldwin, Bob Dooley, David Geffre, Robert D. Hofer, Mary Lou Jorgenson, Sharon Larson, Ed Ligtenberg and Douglas Weber is granted, doc. 22;

19

(2)	That the motion of the John Doe defendants and Transcor, doc. 25, is granted; and

(3)	That the state-law claims for false imprisonment, invasion of privacy, infliction of emotional distress, battery, assault, negligence and outrageous conduct are dismissed without prejudice.

Dated this 29th day of September, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Shelly Margulies
(SEAL)   DEPUTY